SEVA'AETASI FAMILY by TAGO
ROBERT SEVA'AETASI, Plaintiff

v.

FANENE TAUVEVE, MULIUFI FANENE, and
FETAIAIGA FANENE, Defendants

TAGO SEVA'AETASI, ASUEGA FA'AMAMATA L. SALANOA,
and LOTO GI TAVAI, Objectors/Plaintiffs

v.

FANENE F. TAOFI KAVA for FANENE FAMILY,
Defendants/Claimants

ROBERT S. TAGO SEVA'AETASI, Objector/Plaintiff

v.

UA TA'ITA'I and EPI TA'ITA'I, Defendants/Claimants

EPI UA TA'ITA'I, ASUEGA F. LAUVAI SALANOA,
FANENE FETAIAIGA TAOFI KAVA, and IVI K. PENEUTA,
Plaintiffs/Objectors

v.

ROBERT S. TAGO SEVA'AETASI for
SEVA'AETASI FAMILY, Defendant/Claimant

UIVA TE'O for TE'O FAMILY, Intervenor

118

High Court of American Samoa
Land & Titles Division

December 13, 1988

Before REES, Associate Justice, TAUANU'U, Chief Associate Judge, and TUIAFONO, Associate Judge.

Counsel: For Seva'aetasi Family, Asaua Fuimaono
For Asuega, Charles Ala'ilima
For Gi, Edwin Gurr
For Fanene, Aviata Fa'alevao
For Ta'ita'i, Togiola T.A. Tulafono
For Te'o Family, Lutu F. Fuimaono

This case concerns land called Ili'ili and Tuilemuia in the village of Pago Pago.

119

## I. The Seva'aetasi Claim

The case began as a dispute between Robert S. Tago Seva'aetasi and members of the Fanene family. Tago and/or the Seva'aetasi family are the undisputed owners of a 2.5 acre tract called Ili'ili, registered in 1907 by Alex Forsythe and conveyed to Tago as agent for the Seva'aetasi family in 1951. In an action by the government for condemnation of land in the area in order to build a road, the Seva'aetasi family was also held to be the owner of land extending to the west of this tract. Government of American Samoa v. Leota, No. 248-1964. Since at least 1974 Tago Seva'aetasi has been disputing with members of the Fanene family the ownership of land immediately adjacent to the tracts taken by the government. See Fanene v. Tago, LT No. 1417-74. In 1985 Tago brought an action to enjoin construction in an area near the Seva'aetasi part of the government road. Both Tago and Fanene then made surveys of the land they claim in the area. They offered these surveys for registration and various neighboring landowners objected, giving rise to two more court cases. Finally, Epi Ua Ta'ita'i offered for registration a small parcel of land also contained within the Seva'aetasi survey. Tago Seva'aetasi objected and this case, too, came to the Court. We consolidated the four actions.

The objectors to the Seva'aetasi survey lay great stress on the fact that Seva'aetasi is not a matai name recognized by the Pago Pago village council. Since Seva'aetasi is not a matai of Pago Pago, they argue, the Seva'aetasi family cannot own communal land in Pago Pago. Tago's response to this was to produce evidence that the then holder of the Seva'aetasi title registered himself as a matai in Pago Pago in 1912.

When asked why the title was not recognized by the village council, Tago responded that he had wished not to discuss this matter but that since the Court had brought it up he had no choice. This is a fairly frequent response to questions about the history of matai titles. Often, as in this case, it precedes a lengthy discussion of how the witness's ancestors came from Western Samoa to Tutuila and conquered or ruled the local people.

Tago's version of Pago Pago history, severely condensed by the Court, is that a chief named Te'o Seva'aetasi came from Upolu perhaps 200 years ago. He was the progenitor of both the Te'o and Seva'aetasi titles in Tutuila. He sojourned for a while in the Western District, then came to Pago Pago where he divided up the land therein. The clear implication is that the exclusion of the Seva'aetasi title (which was registered by Tago's father but has been vacant for many years) from the Pago Pago village council is impudence of the first order.

Other families take strong issue with this testimony, particularly with Tago's statement that when Te'o Seva'aetasi came to Pago Pago there was no chief called Mauga.

Fortunately, the Court does not need to decide this historical question, for Tago's claim in this case does not stand or fall on whether he should be regarded as a matai in the village of Pago Pago. Before the coming of the United States government the structure of Samoan society was such that families of one village did not acquire land in other villages by original occupation. Even in those days, however, there are reported instances of acquisition of such land by gift. Today anyone with at least fifty per cent Samoan blood can acquire land in any village --- not just the village in which his family or matai title resides --- by gift or purchase. Moreover, since the coming of the government it has often happened that people of one village move to unoccupied land near another village and begin to cultivate it. In most cases these people later claim the land as their individual land, but there is no legal impediment to their claiming it on behalf of a communal family. A person who buys or is given a tract of land, or who acquires it by original occupation and cultivation, has the option of doing so on his own individual account or on behalf of his family.

It was proven at trial that Tago and other members of the Seva'aetasi family have occupied the 2.5 acre tract called Ili'ili even earlier than their formal acquisition of it from their cousin Mary Howden in 1951. During this period they were also cultivating land to the west of the 2.5 acre tract, of which we have no convincing evidence of prior occupation by anyone else. The weight of the testimony is to the effect that Tago's sister

121

Sifusi lived for many years in a house just downhill from a mango tree which was to the west of the 2.5 acre tract. Moreover, the Court's recognition of Tago's claim to the land taken for the government road for some distance to the west, while it does not have the effect of <u>res judicata</u> with regard to ownership of surrounding land, does bolster the trial testimony of Tago about his family's cultivations in the area, and of numerous witnesses about the presence of Sifusi.

We therefore hold that the Seva'aetasi family owns the land to the west of its 2.5 acre tract, south of the government road, north of the Epi Ua Ta'ita'i survey, and east of the Fanene survey. The Seva'aetasi family also owns a small piece of the land included in the Fanene survey just south of the government road, more particularly described hereinafter.

## II. The Epi and Ua Ta'ita'i Claim

In 1947 Epi, a niece of Tago Seva'aetasi who had been living with him on Ili'ili, married a man named Ua Ta'ita'i. They built a house on land to the west of the 2.5 acre Seva'aetasi tract and to the south of the Fanene survey. Tago testified that he gave Epi and Ua permission to occupy this land and that they did so as members of the Seva'aetasi family. The weight of the evidence, however, is that they purchased it from a minister of religion named Feleti who was of the Fuga family and who had been occupying it before 1947.

Epi's sister Nu'ulau Vaesa'u, who has lived on this land for many years, testified that she and Epi never rendered tautua to Tago on account of their occupation of the land. She testified that they participated in family affairs only in ways that were appropriate irrespective of whether they occupied family land. Epi also submitted credible documentary evidence of her contract with Feleti and of her payments to him. Reputation in the community also upholds the Ta'ita'i claim: when asked to name their neighbors the witnesses for other parties invariably identified this tract as that of Epi and Ua, whereas other members of the Seva'aetasi family were generally identified as relatives of Tago rather than as separate landholders. No one but Tago believed Epi and Ua were occupying their land on his behalf.

## III. The Fanene and Asuega Claims

Various members of the Fanene family have long cultivated land to the north of the Epi and Ua Ta'ita'i tract. (Fanene also appears to own land further up the mountain, as well as land to the east in the vicinity of the L.M.S. church. These lands, like other lands in the vicinity owned by Seva'aetasi and Asuega, are not at issue in this case.) The Fanene family filed a claim to the land in question in 1964, and filed the aforementioned injunctive action in 1974.

In the present action the area claimed by Fanene is also claimed by Asuega. She points out that all the Fanene family members who have occupied the land over the years are also blood members of her own family. Moreover, in a post-trial affidavit Asuega identifies two people who she says once occupied the land and who she says were members of the Asuega family but not of the Fanene family.

The weight of the evidence, however, is that the land in question is Fanene land. Oti Fanene, whom most witnesses for other parties remember as the most visible member of either family on the land during the last thirty years or so, is descended from both Asuega and Fanene but thinks of himself as occupying the land as a Fanene. Witnesses for other parties invariably identified the people in this area as "Fanene people." Only Asuega herself identified the two non-Fanene family members as occupying the area in question; even these two could have been on the land because of their connection to others who did have Fanene blood.

The failure of the then Asuega title holder to file a claim to the land in question when the government condemned the land for the road in 1964 is hardly consistent with a long family tradition that this was Asuega land. Indeed, the present Asuega testified that she herself --- a member of both the Fanene and Asuega families who then held neither title --- had urged Fanene to file his claim but made no such suggestion to Asuega.

We conclude that the Fanene family may register the land within the Fanene survey, with

123

the exception of the part just south of the government road that extends to the east of the main part of the survey; and with the further exception of the area north and west of the bend in the government road, part of which Fanene has conceded to Gi. We further conclude that the Fanene family owns the following areas outside the Fanene survey: a strip to the south of their survey and north of the Epi and Ua Ta'ita'i survey; and a small area north of 'the government road, east of the Fanene survey, and west of the 2.5 acre Seva'aetasi tract.

We express no opinion about the relationship between the two Fanene titleholders in Pago Pago, particularly about whether Fanene Fetaiaiga has pule over this land to the exclusion of the other Fanene titleholder.

We conclude that the Asuega family owns no land within the area at issue in this case.

### IV. The Gi Claim

Gi objected to the part of the Fanene survey that is north and west of the government road. At trial both Gi and Fanene told the Court that they intend to compromise their claims and do not wish the Court to make a judgment thereon. Accordingly, we state no opinion with respect to that part of the Fanene survey north of the northernmost line of the Seva'aetasi and Asuega claims and north and west of the government road.

### V. The Te'o Claim

Uiva Te'o was granted leave to intervene on behalf of the Te'o family, although the Court noted that no objection was filed to any of the surveys within the required sixty days. If Te'o had stated a meritorious claim, we would have been faced with the question whether the failure of any member of the Te'o family to object within the statutory period precluded the Court from recognizing this claim.

The gist of the Te'o claim is that all the chiefs in the area owe service to Te'o and all the lands occupied by them are Te'o lands. The witness who testified on behalf of the Te'o claim said the first Te'o had come to Pago Pago hundreds or

thousands of years ago and had helped to expel the Tongan invaders. He then told various chiefs where to put their houses and plant their crops within the liberated areas.

It is quite possible, however, for a chief to be recognized as having a certain authority over other chiefs and yet for these other chiefs to own their own land. In almost every village and county there is at least one chief who has "political" pule over the whole village or district without having "proprietary" pule over the communal lands of other families. An excerpt from the testimony of a Te'o titleholder almost sixty years ago is instructive:

[The Court]: Do you claim that Leota is now living on land that you allowed him to live on?

[Te'o]: Yes.

Q: How long ago did Leota ask you if he might live there?

A: Many years ago.

Q: How old did you say that you were?

A: 51 years.

Q: Do you know how old Leota is?

A: Maybe 70 years.

Q: How old were you when you gave Leota permission to occupy this land?

A: I do not mean it was myself but the other holder of the name Teo.

. . . .

Q: Would you have any objections to allowing Leota to register the land he lives on?

A: No.

. . . .

Q. Did you yourself ever plant anything up there or reap the harvest?

125

A: No.

Q: And yet you have the pule of this land?

A: No.

Q: You said you gave Seva'aetasi and Leota permission to live there?

A: I mean this land originally was owned by Teo, and it was given to Leota and Seva'aetasi and Teo has no more right to it.

Transcript of Hearing held May 27, 1930, in Leota v. Seva'aetasi, No. 1-1929.

Assuming the accuracy of the historical account given by the Te'o witness at trial, we believe the status of this land to be similar to that under consideration in the Leota case. Even if one chief originally told other chiefs in a certain area where to settle and even if they still owe him some service on that account, land in Samoa and elsewhere has a way of eventually being considered the property of those who settled on it and cultivated it.

## Conclusion

The Seva'aetasi family may register a tract bounded on the East by the 2.5 acre Seva'aetasi tract already registered as Ili'ili[1]; on the South by the Epi and Ua Ta'ita'i survey; on the West by a line beginning at the southeastern corner of the Fanene survey and extending to the point where the northern boundary of the Seva'aetasi and Asuega

---

[1] The Court was greatly assisted in its assessment of the location of the various parties' claims by a composite map prepared by Meko Aiumu and introduced into evidence as Tago Exhibit 10. The lines and points described in this section of our opinion are all depicted in Exhibit 10. The Court has also used Exhibit 10 as the starting point for a sketch depicting the land held in this opinion to be the property of the various parties. This sketch is available for inspection in the Clerk's Office.

surveys meets the western edge of the land taken for the government road (at about the midpoint in the sharp bend in the road); and on the North by the southern edge of the land taken for the government road.

Epi Ta'ita'i and the Estate of Ua Ta'ita'i (or his heirs or successors, if the estate has been closed) may register the Epi and Ua Ta'ita'i survey.

The Fanene family may register two tracts, separated by a portion of the land taken for the government road. The first tract is defined on the South by the Epi and Ua Ta'ita'i survey; on the West by the stream defining the western edge of the Fanene survey; on the North by the northernmost line of the Seva'aetasi and Asuega surveys until it meets the land taken for the government road, at the midpoint of the sharp bend near the water tank; and on the East by a line extending from the point just defined (at the midpoint of the sharp bend) to the southeasternmost point of the Fanene survey, and beyond that point to the northern boundary of the Epi and Ua Ta'ita'i survey. The second tract is defined on the South by the northern edge of the land taken for the government road as it heads west toward the sharp bend near the water tank; on the Northwest by the southeastern edge of the land taken for the government road after it turns the bend and heads toward the water tank, as far as the northern boundary of the Fanene survey; and on the Northeast by the northern boundary of the Fanene survey from the southeastern edge of the land taken for the government road to the northeasternmost corner of the Fanene survey, and extending beyond that point to the intersection of the northern edge of the land taken for the government road with the western boundary of the 2.5 acre Seva'aetasi tract.

We express no opinion about the ownership of the land within the Fanene survey north of the northernmost boundary of the Seva'aetasi and Asuega surveys and west of the land taken for the government road.

We also express no opinion about the land within the Seva'aetasi survey north of the government road, except that the Fanene family proved its ownership of the small portion of this tract described above and that the Seva'aetasi family did not prove its ownership of any land

127

north of the government road except that part contained in the 2.5 acre survey previously registered.

It is so ordered.